IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH DRUMM, RONALD, | : | 4:15-CV-00854 |
| MCELWEE, CAROL BECK, and | : | |
| LISA DELBAUGH, | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| TRIANGLE TECH, INC., | : | |
| TIMOTHY MCMAHON, | : | (Judge Brann) |
| CATHERINE WAXTER, | : | |
| LISA CAPUZZI, and | : | |
| DEBORAH HEPBURN, | : | |
| | : | |
| Defendants. | | |

**MEMORANDUM**
April 7, 2016

Pending before this Court is a motion to dismiss, filed by Triangle Tech,

Inc., Timothy McMahon, Catherine Waxter, Lisa Capuzzi, and Deborah Hepburn

(hereinafter collectively "Defendants") which seeks to dismiss a complaint filed by

Joseph Drumm, Ronald McElwee, Carol Beck, and Lisa Delbaugh (collectively

"Plaintiffs") for failure to state a claim upon which relief can be granted, pursuant

to Federal Rule of Civil Procedure 12(b)(6).[1] Defendants seek to dismiss the

complaint in its entirety. The complaint includes counts of wrongful termination

and retaliation under the False Claims Act and the Pennsylvania Whistleblower

Protection Law, filed by all Plaintiffs against all Defendants and, in the alternative,

a count alleging a violation of the Family and Medical Leave Act (hereinafter the

---

[1] ECF No. 12.

1

"FMLA"), filed by Plaintiff McElwee against Defendant Triangle Tech, Inc. The matter has been fully briefed and is ripe for disposition.  In accordance with the following reasoning, Defendants' motion to dismiss is granted.

## I. BACKGROUND

This matter arises from employment relationships between the parties. Plaintiffs were each employed by Defendant Triangle Tech in various capacities. Defendant Triangle Tech operates technical schools throughout Pennsylvania in the following locations: Sunbury, DuBois, Bethlehem, Pittsburgh, Greensburg, and Erie. On June 5, 2014, Plaintiff Drumm, employed at the time as the Director of the Sunbury School, one of the Triangle Tech schools, was allegedly directed by Defendant Waxter to fraudulently sign and back-date a document in order to secure financial aid funds by the United States Department of Education (hereinafter "the Department of Education"). After refusing to do so, Plaintiff Drumm proceeded to report the incident to his immediate supervisor, Defendant Hepburn, and Sofia Janis, the Vice President of Human Resources. On June 18, 2014, Ms. Janis contacted Plaintiff Drumm, indicating that a thorough investigation had been conducted into the matter which yielded no evidence of wrongdoing. The next day, Plaintiff Drumm filed a complaint with the Accrediting Commission of Career Schools and Colleges.

A few days later, on June 25, 2014, Plaintiffs Drumm and McElwee met with the Office of Inspector General (hereinafter "OIG"), the administrative agency charged with investigating complaints of "waste and abuse to improve the efficiency and effectiveness of the Department of Education programs and operations."[2]  Plaintiff McElwee was questioned by the OIG investigator and provided a statement supporting Plaintiff Drumm's allegations.

An investigation was conducted through the months of July and August 2014. On August 11, 2014, Defendant Hepburn scheduled a mandatory pre-accreditation meeting at which Defendant McMahon, the President of Triangle Tech, notified all the employees, including all Plaintiffs, that a Department of Education complaint was filed against Defendant Triangle Tech and that he was "extremely disappointed."[3] Defendant McMahon also advised the employees that Defendant Triangle Tech would learn who filed the complaint with the Department of Education.

As a result of the OIG investigation, Defendant Triangle Tech. repaid approximately $70,000 to the Department of Education for financial aid it improperly received. Plaintiffs allege that "[s]hortly thereafter, Defendants began a

---

[2] ECF No. 10 at ¶ 20-21.
[3] *Id.* at ¶ 38.

concerted effort to investigate Plaintiffs (*sic*) actions in the workplace with the intent of finding a basis for immediate termination."[4]

Plaintiffs Drumm, Delbaugh, and Beck were suspended without pay on November 20, 2014, pending an investigation into their behavior in the workplace. On December 3, 2014, Plaintiff Drumm was terminated for fostering an unprofessional culture in the workplace. The next day, Plaintiffs Delbaugh and Beck were terminated for bullying and violations of wage and hour laws, respectively.

On July 24, 2014, the day before he met with the OIG investigator, Plaintiff McElwee notified his supervisor that he intended to request time off for the birth of his first child, who was due in September 2014. On September 24, 2014, Plaintiff McElwee provided notice to Defendant Triangle Tech that he intended to take two weeks of Family Medical Leave pursuant to the FMLA (which was beginning on approximately September 30, 2014) for the birth of his child. Two days later, on September 26, 2014, an Employee Leave of Absence Request Form was received and approved by supervisors and a Notice of Eligibility and Rights & Responsibilities pursuant to the FMLA was prepared and issued to Plaintiff McElwee, indicating that he was eligible for leave.

---

[4] *Id.* at ¶ 45.

Plaintiff McElwee's child was born on September 29, 2014 with serious medical issues. The next day, Plaintiff Drumm informed the other supervisors of the child's serious medical issues and Plaintiff McElwee was asked to provide sufficient certification to support his request for leave pursuant to the FMLA. That same day, Plaintiff McElwee provided a certificate reflecting the child's birth.

Several days later, on October 7, 2014, Plaintiff Drumm was advised that Plaintiff McElwee would be terminated due to poor performance and was directed to prepare the termination paperwork. On October 8, 2014, Plaintiff McElwee submitted a Certification of Health Care Provider for Family Member's Serious Health Condition to Triangle Tech reflecting two weeks of consecutive leave and intermittent leave thereafter. On October 13, 2014, Plaintiff McElwee was terminated due to poor performance, as planned.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[5] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[6] This is true of

---

[5] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[6] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[7]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[8] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[9] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[10]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "Although the plausibility standard does not impose a probability requirement, it does require a

---

[7] *Neitzke*, 490 U.S. at 327.
[8] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).
[9] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.
[10] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[11] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).
[12] *Iqbal*, 556 U.S. at 678.

pleading to show more than a sheer possibility that a defendant has acted unlawfully."[13] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[14]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[17] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[18] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[19] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[13] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).
[14] *Twombly*, 550 U.S. at 556.
[15] *Iqbal*, 556 U.S. at 679.
[16] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).
[17] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[18] *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[19] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

suffice."[20]

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court
> reviewing the sufficiency of a complaint must take three steps. First, it
> must tak[e] note of the elements [the] plaintiff must plead to state a
> claim. Second, it should identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of truth.
> Finally, [w]hen there are well-pleaded factual allegations, [the] court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.[21]

## III. DISCUSSION

### A. <u>False Claims Act</u>

Defendants argue that Plaintiffs' claims under the False Claims Act must be

dismissed because they have failed to state a prima facie claim as required under

the law. The False Claims Act, 31 U.S.C. § 3729 *et al.*, imposes liability on a

person who "knowingly presents, or causes to be presented, a false or fraudulent

claim for payment or approval."[22] To establish a prima facie case under the False

Claims Act, a plaintiff must first show that (1) the defendant presented or caused to

be presented to an agent of the United States a claim for payment; (2) the claim

was false or fraudulent; and (3) the defendant knew the claim was false or

---

[20] *Iqbal*, 556 U.S. at 678.
[21] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).
[22] 31 U.S.C. § 3729(a)(1)(A).

8

fraudulent."[23]  "Protected conduct" consists of actions taken in furtherance of a qui tam action; there must be a nexus between the conduct and the federal action.[24] Determining whether conduct constitutes "protected conduct" is a fact-specific inquiry that is to be construed broadly.[25]

The False Claims Act also provides relief from retaliatory actions for any employee, contractor, or agent who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . because of lawful acts done by [that person] . . . to stop 1 or more violations" of the False Claims Act.[26] To prove retaliation, a plaintiff must show that he was discriminated against because he engaged in protected conduct, as defined above. Thus the plaintiff must show that the employer had notice that the employee engaged in the protected conduct and that the "retaliation was motivated, at least in part, by the employee's engaging in that protected activity."[27]

First, Defendants contend that, because there is no individual liability under the False Claims Act, the counts under the False Claims Act against Defendants McMahon, Waxter, Capuzzi, and Hepburn in their individual capacity must be dismissed. Section 3730(h) of the False Claims Act provides protection to the

---

[23] *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001)(*citing Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1043 (Fed. Cir. 1994)).

[24] *Hutchins*, 253 F.3d at 187; *Davis v. Point Park Univ.*, 2010 WL 4929104, *6 (W.D. Pa. Nov. 30, 2010).

[25] *Hutchins,* 253 F.3d at 187; *Campion v. Northeast Utils.,* 598 F.Supp.2d 638 (M.D.Pa.2009)

[26] 31 U.S.C. § 3730(h).

[27] *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998); *Hutchins*, 253 F.3d at 188.

employee who is discharged or discriminated against "by his or her employer."[28]

Defendant Triangle Tech is the employer of all Plaintiffs, not the individual

Defendants. Accordingly, Plaintiffs' claims against Defendants McMahon, Waxter,

Capuzzi, and Hepburn filed under the False Claims Act are dismissed with

prejudice.[29]

### 1. False Claims Act with regards to Plaintiffs Delbaugh and Beck

Second, Defendants argue that Plaintiffs have failed to articulate a prima

facie claim for retaliation under the False Claims Act with regards to Plaintiffs

Delbaugh and Beck because they have failed to plead any facts alleging that either

Plaintiff engaged in any protected conduct. Plaintiffs, in their brief in opposition to

Defendants' motion to dismiss, argue that they sufficiently pled that Plaintiffs

Delbaugh and Beck "supported Drumm and McElwee in the protected activity and

participated in the OIG investigation."[30] For support, they cite to paragraphs 36,

37, 38, 39, 65, 66, 67, 68 of their amended complaint.

After review, this Court agrees that Plaintiffs have failed to plead any facts

that Plaintiffs Delbaugh and Beck engaged in any protected conduct. The amended

complaint pleads the following facts with regard to Plaintiffs Delbaugh and Beck

and the OIG investigation: 1) all Plaintiffs, along with all the other employees,

---

[28] 31 U.S.C. § 3730(h).
[29] *See Davis*, 2010 WL 4929104 at *5; *see also Palladino ex rel. U.S. v. VNA of Southern N.J., Inc.*, 68 F. Supp. 2d 455, 472 (D.N.J. 1999).
[30] ECF No. 14 at 10, 11.

were in attendance at the mandatory meeting on August 11, 2014 where Plaintiffs were told someone had filed the Department of Education complaint;[31] 2) Plaintiff Delbaugh reported directly to Plaintiff Drumm;[32] 3) modifications to Plaintiff Beck's schedule were approved by Plaintiff Drumm;[33] and 4) Defendant Triangle Tech was aware that Plaintiffs Delbaugh and Beck had excellent professional working relationships with Plaintiff Drumm.[34]

None of these allegations support Plaintiffs' argument that Plaintiffs Delbaugh and Beck were involved in the OIG investigation or were in any way engaged in protected conduct. In addition to the allegations listed above, Plaintiffs cite paragraphs 65-68 of their amended complaint in support for their contention that Plaintiffs Delbaugh and Beck were involved in the investigation. These paragraphs, however, only mention "Plaintiffs" collectively. Plaintiffs make specific allegations directly linking Plaintiffs Drumm's and McElwee's conduct to the OIG investigation but seek to lump all of the Plaintiffs together in alleging that their "actions w[ere] protected conduct . . . under the Fair Claims Act . . ."[35]

---

[31] ECF No. 10 at ¶ 37-38.
[32] *Id.* at ¶ 54.
[33] *Id.* at ¶ 59.
[34] *Id.* at ¶ 55, 58.
[35] *Id.* at ¶ 65. As Defendants mention, allegations that a person who has a very close friendship beyond the normal working relationship with the person engaged in the protected conduct can sometimes be sufficient to establish an action for retaliation. These allegations are not pled by Plaintiffs in the case at hand. Plaintiffs state that Plaintiffs Drumm and McElwee were close friends but do not make these same allegations about Plaintiffs Drumm or McElwee with Plaintiffs Delbaugh or Beck.

11

Plaintiffs fail to meet the pleading standards with regards to Plaintiffs Delbaugh and Beck.

## 2. False Claims Act with regards to Plaintiffs Drumm and McElwee

Defendants next argue that Plaintiffs have failed to plead any facts that would demonstrate a causal connection between Plaintiffs Drumm's and McElwee's involvement in the OIG investigation. They argue that merely stating that an adverse employment action occurred after protected conduct is insufficient to support a retaliation claim under the Fair Claims Act as a matter of law. Plaintiffs, on the other hand, argue that a causal connection can be shown through a suggestive temporal proximity between the protected activity and the alleged retaliation. Defendants counter that the time between the OIG investigation and the alleged adverse employment action in the instant matter does not suggest retaliation.

As stated above, to survive a motion for summary judgment in a retaliation action under the False Claims Act, a plaintiff must plead sufficient facts to establish that 1) the plaintiff engaged in protected activity, 2) the employer took a materially adverse action against the plaintiff, and 3) there was a causal connection between the protected activity and the employer's action.[36]

---

[36] *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (*citing Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

In the case at hand, it is undisputed that Plaintiffs have pled sufficient facts to suggest that Plaintiffs Drumm and McElwee were likely engaged in protected activity and that both suffered materially adverse actions in the form of termination from employment. The question here, however, is whether there was a causal connection between the protected activity and the adverse action.

Plaintiffs allege that on June 5, 2014, Plaintiff Drumm was directed to sign and back-date a financial aid document.[37] After refusing to do so, reporting the information to his superiors, and requesting that an internal investigation be conducted, which yielded no results, Plaintiff Drumm contacted and filed a complaint with the Department of Education on June 18, 2014.[38] The next day, he filed a complaint with the Accrediting Commission of Career Schools and Colleges.[39] He and Plaintiff McElwee met with the OIG investigator on June 25, 2014.[40]

On August 11, 2014, the mandatory meeting was held at which Plaintiffs were notified that Defendants knew that a complaint had been filed.[41] According to Plaintiffs, Defendant McMahon expressed extreme disappointment and alluded to the fact that he would learn who filed the complaint.[42]

---

[37] ECF No. 5 at ¶ 25.
[38] *Id.* at ¶ 31.
[39] *Id.* at ¶ 32.
[40] *Id.* at ¶¶ 33, 34.
[41] *Id.* at ¶ 37.
[42] *Id.* at ¶ 38, 39.

Plaintiffs then make the two following allegations: "McMahon was aware Drumm filed the complaint;" and "[i]t is believed that McMahon was aware that McElwee accompanied Drumm to his meeting with the DOE investigator and provided information."[43]

Plaintiff McElwee was terminated on October 13, 2014.[44] On November 20, 2014, Plaintiff Drumm was suspended without pay.[45] He was subsequently terminated on December 3, 2014.[46]

The Third Circuit has held that where the temporal proximity between protected activity and the adverse action is "unusually suggestive," it is sufficient standing alone to create an inference of causality . . . "[47] "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . ."[48] A lapse of three or four months is insufficient to establish unusually suggestive temporal proximity.[49] "'Although there is no bright line rule,' the Third Circuit has

---

[43] *Id.* at ¶¶ 40, 41.
[44] *Id.* at ¶ 47.
[45] *Id.* at ¶ 50.
[46] *Id.* at ¶ 51.
[47] *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).
[48] *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001).
[49] *Id.* (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997), *Hughes v. Derwinski,* 967 F.2d 1168, 1174–1175 (7th Cir. 1992)); *see also LeBoon*, 503 F.3d at 234 (holding that a period of three months between the protected activity and the adverse employment action was insufficient).

14

not found any period longer than three weeks so 'unduly suggestive' of retaliatory animus that it was sufficient to establish causation without other evidence."[50]

If the time period between the protected activity and the adverse employment action is insufficient to establish unusually suggestive temporal proximity, the plaintiff must plead additional facts that when "looked at as a whole, may suffice to raise the inference."[51] "[I]ntervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus" are facts a plaintiff may plead to raise the inference.[52]

Plaintiffs merely indicate that Defendants were aware that Plaintiff Drumm made the report and that it is believed that Plaintiff McElwee assisted him. Plaintiffs make no statements indicating how Defendants became aware of Plaintiffs Drumm's and McElwee's protected conduct or what made them believe that Defendants suspected them. They state only that Defendants knew of the protected activity and that the Plaintiffs were then terminated as a result, relying on the argument of temporal proximity.

Plaintiff Drumm made the complaint to the Department of Education on June 18, 2014. Plaintiff McElwee was terminated on October 13, 2014 and

---

[50] *Cary v. National Events Svcs.*, 2015 WL 667519, *7 (E.D. Pa. Feb. 13, 2015) (*citing Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)).
[51] *LeBoon*, 503 F.3d at 232 (*citing  Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 284 (3d Cir. 2000)).
[52] *Id.*

Plaintiff Drumm was suspended without pay on November 20, 2014 and then terminated on December 3, 2014. Defendants had notice that the complaint was filed sometime before August 11, 2014, the date on which the mandatory meeting was held. Plaintiffs indicated that Defendant McMahon knew Plaintiff Drumm filed the complaint, but fail to specify the date on which Defendants became aware. It appears that Defendants could have found out that Plaintiff Drumm filed the complaint anytime between July 18, 2014 and November 20, 2014.

Upon a careful reading of Plaintiffs' amended complaint, however, it would seem that Plaintiffs allege that Defendants knew that Plaintiff Drumm had filed the complaint prior to or around August 21, 2014, the date the Department of Education's finding was released. Plaintiffs indicate that shortly after this date, "Defendants began a concerted effort to investigate Plaintiffs *(sic)* actions in the workplace with the intent of finding a basis for immediate termination."[53] If Defendants were aware of Plaintiffs' protected activities on August 21, 2014, Defendants did not act until approximately six or seven weeks later, when Plaintiff McElwee was terminated. Another five weeks lapsed before Plaintiff Drumm was suspended without pay. The adverse employment action was clearly beyond the three week time limit to establish unusually suggestive temporal proximity in the Third Circuit.

---

[53] ECF No. 10 at ¶ 45.

Accordingly, Plaintiffs' claims pursuant to the False Claims Act are dismissed. The Court will grant leave to permit these Plaintiffs to amend their complaint against Defendant Triangle Temp in order to provide more facts to meet the pleading standard to establish a prima facie case under the False Claims Act.

## B. <u>Pennsylvania Whistleblower Law</u>

The intent of the Pennsylvania Whistleblower Law is to protect employees who make good-faith efforts to alert authorities to governmental waste or wrongdoing from retaliation from their employer.[54]

Defendants argue that Plaintiffs' claim under the Pennsylvania Whistleblower Law fails as a matter of law.

The Pennsylvania Whistleblower Law reads as follows:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.[55]

## 1. *The Pennsylvania Whistleblower Law is applicable to the matter at hand.*

Defendants argue that this Court must dismiss Plaintiffs' claims under the Pennsylvania Whistleblower Law because Plaintiffs have failed to plead that

---

[54] *Cipriani v. Lycoming Co. Housing Authority*, 177 F. Supp. 2d 303, 330 (M.D. Pa. 2001) (*citing Podgurski v. Pennsylvania State Univ.*, 722 A.2d 730, 732 (Pa. Super. Ct. 1998)).
[55] 43 P.S. § 1423(a).

Defendant Triangle Tech falls within the definition of "employer" under the act.

Defendants also argue that Plaintiffs have failed to aver any facts to support the

contention that Defendants' actions regarding the financial aid documents fall

within the definition of "waste" or "wrongdoing" under the act.

For the purposes of the Pennsylvania Whistleblower Law, an "employer" is

defined as either a public body or an individual, partnership, association, for-profit

corporation, or not-for-profit corporation that "receives money from a public body

to perform work or provide services relative to the performance of work for or the

provision of services to a public body."[56] A "public body" is further defined, in

relevant part, as

> Any other body which is created by Commonwealth or political
> subdivision authority or which is funded in any amount by or through
> Commonwealth or political subdivision authority or a member or
> employee of that body.[57]

In their amended complaint, Plaintiffs allege that Defendant Triangle Tech

receives federal and state funding to operate as a technical school and is thus a

public body under the act.[58] Accordingly, as the language of the statute is

unambiguous on its face and states that a public body can be any body "which is

funded in any amount by or through the Commonwealth," Plaintiffs have pled

---

[56] 43 P.S. § 1422.
[57] Id.
[58] ECF No. 10 at ¶¶ 74, 75.

sufficient facts at this stage in the litigation to establish that Defendant Triangle Tech is a public body for the purposes of the Pennsylvania Whistleblower Law.[59]

While the definition of employer is broad, the Pennsylvania Whistleblower Law provides relatively narrow definitions of "waste" and "wrongdoing." "Waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."[60]

"Wrongdoing," on the other hand, refers to "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."[61] "Wrongdoing" includes "not only violations of statutes or regulations that are 'of the type that the employer is charged to enforce,' but violations of any federal or state statute or regulation, other than violations that are 'of a merely technical or minimal

---

[59] *See Riggio v. Burns*, 711 A.2d 497, 500 (Pa. Super. Ct. 1998) ("The statute plainly and unequivocally makes any body "funded in any amount by or through Commonwealth ... authority" a public body for purposes of the Whistleblower Law. Where the language of a statute is unambiguous on its face, we are bound to give effect to that language. Parenthetically, we note that it is not unreasonable for the legislature to condition the receipt of state funds on the acceptance of the responsibilities embodied in the Whistleblower Law." (internal citations omitted)); *but see Campion v. Northeast Utilities*, 598 F. Supp. 2d 638, 651 (M.D. Pa. 2009) ("The FCA's anti-retaliation provision applies broadly to any employee-employer relationship . . . On the other hand, Pennsylvania's Whistleblower Law applies only to employees of government entities."). These cases are not wholly inconsistent, however, as the Pennsylvania Whistleblower Law clearly includes, on its face, private corporations that receive any funding from the Commonwealth of Pennsylvania.
[60] *Id.*
[61] *Id.*

nature.'"[62] An actual violation of a statute or regulation must have occurred;

potential violations are not protected by the statute.[63]

In the matter at hand, Plaintiffs plead the following:

25. On June 5, 2014, Drumm was contacted by Waxter regarding financial aid for a student that could not be processed, unless Drumm signed the document and back-dated it. Such action would, as directed by Waxter, permit Triangle Tech to receive Title IV Funds from the [Department of Education ("DOE")]. Such action would have resulted in a false record submitted to the DOE to obtain student aid. Drumm refused on the basis that such action was fraudulent and would result in the fraudulent receipt of student aid from the DOE.[64]

After Plaintiff Drumm refused, Plaintiffs allege that "Waxter, or another

individual at her direction acquiesced by Defendants, signed and back-dated the

document for submission to the DOE."[65] Subsequently, an internal investigation

was conducted, resulting in the conclusion that there was "no evidence of

wrongdoing."[66] Plaintiff then reported the incident to the Department of Education

and OIG conducted an investigation. The findings of the OIG investigation,

entered by the Department of Education, stated that "any wrongdoing of Triangle

Tech was corrected upon notification by the DOE" and Defendant Triangle Tech

---

[62] *Golaschevsky v. Com., Dept. of Environmental Protection*, 720 A.2d 757, 759 (Pa. 1998) (*citing* 43 P.S. § 1422; *Gray v. Hafer*, 651 A.2d 221, 224 (Pa. Cmwlth. Ct. 1994), *affirmed per curiam*, 669 A.2d 335 (1995)).
[63] *Rodriguez v. Sullivan Co. Victim Svcs*, 2006 WL 952404, *6 (M.D. Pa. April 12, 2006) (*citing Morgan v. Rossi*, 1998 WL 175604, *8 (E.D. Pa. April 15, 1998)).
[64] ECF No. 10 at ¶ 25.
[65] *Id.* at ¶ 28.
[66] *Id.* at ¶ 30.

ultimately repaid approximately $70,000 of financial aid that it allegedly improperly received.[67]

Considering the amended complaint on its face, it is unclear whether Defendant Triangle Tech actually violated a statute or regulation. Plaintiff does not specifically state which statute or regulation Defendants violated and the Department of Education's finding that "any wrongdoing . . . was corrected" leads this Court to conclude that the Department of Education did not definitively find that Defendants violated a statute or regulation.

## 2. Plaintiffs have failed to plead sufficient facts to establish a prima facie claim under the Pennsylvania Whistleblower Law.

Defendants also argue that Plaintiffs have failed to effectively articulate a prima facie claim under the Pennsylvania Whistleblower Law because they failed to establish that Plaintiffs Delbaugh and Beck engaged in any protected activity and Plaintiffs Drumm and McElwee engaged in a protected activity under the Pennsylvania Whistleblower Law. Defendants further contend that Plaintiffs have failed to plead any facts establishing a causal connection between the protected activity and the adverse employment action.

To establish a prima facie case under the Pennsylvania Whistleblower Law, the plaintiff must establish that he made a good faith report of wrongdoing or

---

[67] *Id.* at ¶¶ 43, 44.

waste to the appropriate authorities prior to the alleged retaliation.[68]  The plaintiff must also "come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts."[69]

As discussed at length above with regard to the False Claims Act, Plaintiffs fail to state any facts alleging that Plaintiffs Delbaugh and Beck were in any way engaged in the protected activity. Consequently, their claims under the Pennsylvania Whistleblower Law are dismissed.

Plaintiffs Drumm and McElwee again rely on temporal proximity alone in arguing that the termination of their employment was retaliation for the report to the Department of Education. Six or seven weeks lapsed between the time Defendants began making "concerted effort[s] to investigate Plaintiffs *(sic)* actions in the workplace with the intent of finding a basis for immediate termination"[70] and the time Plaintiff McElwee was terminated. Five or six more weeks lapsed until Plaintiff Drumm was suspended. Several more weeks passed before Plaintiff Drumm was ultimately terminated. While no "bright-line rule" has been established by the Third Circuit, the temporal proximity in this case, with nothing more, is not unusually suggestive that Defendants retaliated against Plaintiffs

---

[68] *Sukenik v. Township of Elizabeth*, --A.3d--, 2016 WL 47824 (Pa. Cmwlth. Ct. January 5, 2016) (*citing O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (2001)).
[69] *O'Rourke*, 778 A.2d at 1200 (*citing Golaschevsky v. Department of Envtl. Protection*, 720 A.2d 757, 759 (1998)).
[70] ECF No. 10 at ¶ 45.

Drumm and McElwee.[71] Therefore, even if Plaintiffs were to establish that the

Pennsylvania Whistleblower Law applies to this case, they have failed to plead

sufficient facts to establish a prima facie claim under it.

## C. Wrongful Termination under Pennsylvania Law

Defendants further contend that, if Plaintiffs are making a claim for

wrongful termination under Pennsylvania Law, which is unclear in their amended

complaint, the claim should be dismissed as a matter of law. "Under Pennsylvania

law, an at-will employee of a private sector employer 'can be terminated for good

reason, bad reason, or no reason at all.'"[72] The Pennsylvania Supreme Court has

held, however, that a right of action against an employer for wrongful termination

may be available if the employer violated a "clear mandate of public policy."[73] The

Third Circuit further held that a plaintiff stating a claim for wrongful termination

under the public policy exception must "show his discharge offended a clear

mandate of public policy" by proving that the discharge "result[ed] from conduct

on the part of the employee that is required by law or from the employee's refusal

to engage in conduct prohibited by law."[74]

---

[71] *See McAndrew v. Bucks Co. Bd. Of Com'rs*, 982 F. Supp. 2d 491 (E.D. Pa. 2013)(discussion on length of time necessary to find a causal connection based on temporal proximity alone).
[72] *Clark v. Modern Group Ltd.*, 9 F.3d 321, 327 (3d Cir. 1993) (*citing Nix v. Temple Univ.,* 596 A.2d 1132, 1135 (1991)).
[73] *Clark*, 9 F.3d at 327 (*citing Geary v. United States Steel Corp.,* 319 A.2d 174 (Pa. 1974)).
[74] *Clark*, 9 F.3d at 327 (*citing Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1344 (3d Cir. 1990)).

Defendants argue that Plaintiffs have failed to allege any specific public policy of the Commonwealth of Pennsylvania that has been violated because of the termination of the Plaintiffs' employment and rely only on a purported violation of federal law. They state that, while the amended complaint contains a vague reference to state law and a reference to the Pennsylvania Whistleblower Law, Plaintiffs essentially rely on violations of federal law and not a law of the Commonwealth of Pennsylvania.

In *Kelly v. Retirement Pension Plan for Certain Home Office*, the Third Circuit held that, for the public policy exception to apply to the general rule in Pennsylvania, "the alleged violation of public policy must be of Pennsylvania public policy, not solely an alleged violation of federal law."[75] The public policy of Pennsylvania is set by the Pennsylvania "Constitution, court decisions and statutes promulgated by [the Pennsylvania] legislature."[76]

In their amended complaint, Plaintiffs fail to allege any violation of Pennsylvania law, aside from the Pennsylvania Whistleblower Law, which this Court found inapplicable to the matter at hand because there was no finding of "waste" or "wrongdoing," as required by the statute and subsequent case law. Accordingly, any claim under the public policy exception to the general at-will rule in Pennsylvania is dismissed.

---

[75] 73 Fed. Appx. 543, **1 (3d Cir. 2003)(*citing McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000)).
[76] *Id.*

24

## D. Claim under the FMLA

Defendants also argue that Plaintiff McElwee's FMLA violation claim must fail as a matter of law because, while he pleads that he submitted a FMLA certification for two weeks off for the birth of his child, he failed to plead that he submitted a second FMLA certification for the separate and distinct leave he allegedly required after the child was born and he learned of the child's serious medical condition. Therefore, they argue, Plaintiff McElwee failed to satisfy his duties and obligations under the FMLA and was therefore not eligible for any FMLA leave for the child's illness. In their reply brief, Plaintiffs fail to address this argument and simply restate the allegations in the amended complaint in support of their argument that Plaintiff McElwee was terminated for taking his FMLA leave.

The FMLA, 29 U.S.C. § 2601 et al, provides twelve weeks of leave over any twelve-month period to employees experiencing "a serious health condition that makes the employee unable to perform the functions" of the employee's position.[77] The employee is entitled to reinstatement to his former position or an equivalent one after completion of the period of qualified leave.[78] As Plaintiffs properly state in their brief in opposition to Defendants' motion to dismiss, to state a claim of

---

[77] 29 U.S.C. § 2612(a)(1).
[78] 29 U.S.C. § 2614(a)(1).

interference with the FMLA, a plaintiff need only "show that he was entitled to benefits under the FMLA and that he was denied them."[79]

Plaintiffs here, however, allege the opposite. Plaintiffs contend that Plaintiff McElwee requested two weeks off for the birth of his child. The requested leave was granted and he took the leave. Plaintiff McElwee does not plead that he submitted a second request for the additional time off that he required once his child was born with a serious medical issue. Plaintiffs fail to clarify the matter in their brief in opposition. Consequently, this claim must be dismissed.

## E. Requests for punitive damages should be dismissed.

Finally, Defendants argue that Plaintiffs' requests for punitive damages must be dismissed because of Plaintiffs' failure to allege any factual averments which support a finding that Defendants' alleged conduct rose to the level necessary for an award of punitive damages.

Plaintiffs' punitive damages requests for punitive damages under the Pennsylvania Whistleblower Law and the FMLA fail as a matter of law because punitive damages are unavailable under those statutes.[80] As this Court has found

---

[79] *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006).
[80] *See O'Rourke*, 778 A.2d 1194, 1203 (Pa. 2001) (stating that punitive damages are not available under the Pennsylvania Whistleblower Law); *see also Churchill v. Star Enterprises*, 1998 WL 254080 (E.D. Pa. April 17, 1998)("[e]motional damages, pain and suffering, are not compensable under [the FMLA]").

26

that all four Plaintiffs' claims under the False Claims Act are dismissed, so are their requests for punitive damages.[81]

## IV. CONCLUSION

In accordance with the foregoing analysis, Defendants' motion to dismiss Plaintiffs' complaint in its entirety is granted.[82] Plaintiffs are, however, granted leave to amend.

An appropriate Order follows.


BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[81] This Court has granted leave to amend their complaint. If they chose to do so, Plaintiffs must allege more than conclusory statements of law, which is what the current amended complaint contains, in requesting punitive damages.

[82] ECF No. 12.